**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NADOWESSIOUX PROPERTIES,** | § | **Case No. 10-41418-h5-11** |
| **LTD.,** | § | **(Chapter 11)** |
| | § | |
| **Debtor.** | § | |

**BONTECOU CONSTRUCTION, INC.'S REBUTTAL MEMORANDUM**
**IN SUPPORT OF ITS CLAIM – NATURE OF UNDERLYING CONTRACT**
(Related to Docket No. 50)

**TO THE HONORABLE KAREN K. BROWN,**
**U. S. BANKRUPTCY JUDGE:**

COMES NOW, Bontecou Construction, Inc., ("***Movant***" and/or "***Bontecou Construction***"), a creditor in the above-captioned bankruptcy case, and files its *Rebuttal Memorandum in Support of Its' Claim – Nature of Underlying Contract* and respectfully shows to the Court as follows:

## OVERVIEW

As requested by the Court, Bontecou Construction, Inc. identified and analyzed the documents that constitute the contract in the case.  (See *Bontecou's Memorandum in Support of Its Claim – Nature of Underlying Contract*, filed March 28, 2011.)  Nadowessioux's response to Bontecou Construction's memorandum on the contract lacks substance.

1.      **Summary – What is the Contract?**

The contract analysis, provided by Bontecou Construction, begins with the initial AIA contract, signed in 2006 before BCI began the project on the Villa.  However, the AIA contract contained ambiguities and the bid, which was reflected in the GMP, was premised upon building "House A."

Debtor cites two cases dealing with AIA contracts.  In the first case, *Summit Constr. Inc. v. Legacy Corner, L.L.C.*, 147 Fed. Appx. 798 (10th Cir. 2005), the Court did not decide the case on its merits because the cost plus AIA contract had a clear and unambiguous arbitration clause that the Court deemed enforceable and the Court compelled arbitration.  In contrast to the evidence here, in the *Summit* case there was no implied-in-fact contract or evidence of the owner's waiver and disregard of key provisions of an original agreement.  Debtor's counsel failed to highlight the Court's helpful discussion in interpreting contracts in Oklahoma, in which it does allow for consideration of other documents and places significant weight on the parties' mutual intent:

> … "[t]he cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties."  *Sunrizon Homes, Inc. v. Am. Guar. Inv. Corp.*, 782 P.2d 103, 107 (Okla. 1988); Okla. 1988); Okla. Stat. Ann. tit.15, § 152 ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.") … ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."); *see also F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir. 1992). *Summit* at 801.

The next case included by the Debtor in its response is *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 1334, 196 P.3d 184 (Wyo. 2008), which it cites without further explanation.  This case does involve an AIA contract, but it does not provide a ruling on the ambiguity or lack thereof in an AIA contract specifically, as it seems the Debtor tries to imply.  The following excerpt, as in the *Summit* case, again recognizes the Court's broad role in effecting the parties' intent and freedom to contract:

> Courts interpret contacts to effectuate the parties' intention, as expressed in the language of the agreement.  *Reynolds v. Milatzo*, 2007 WY 104, ¶ 14, 161 P.3d 509, 513 (Wyo. 2007).  As long as the contract language is clear and unambiguous, our obligation on appeal is to interpret it as a matter of law.  *Id.* The parties to a contract are free to incorporate within their agreement whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the contract.  *Christensen v. Christensen*, 2008 WY 10, ¶ 13, 176 P.3d 626, 629 (Wyo. 2008).  *City of Gillette* at P47, 200.

After accepting the bid and signing the original contract in August of 2006, Nadowessioux changed its mind in October 2006.  They decided they in fact wanted to build a more luxurious and expensive home.  Some time in September or October 2006, Nadowessioux directed their architect to draw plans that reflected their new desires for the Villa which Bontecou Construction has referred to as "House B."  What resulted from Nadowessioux's new plans and designs for "House B," was simply an implied-in-fact contract.  "Wyoming law recognizes that parties to a written contract can orally amend that contract, even when the language of the contract seeks to preclude that very thing."  *Forshee v. Delaney*, 2005 WY 103 P 8, 118 P.3d 445, 449 (Wyo. 2005).

The new implied-in-fact contract was unambiguous on the terms it addressed, and acted as a waiver of the prior, less expensive GMP.  In *Uhrhahn Const. & Design, Inc. v. Hopkins*, 179 P.3d 808 (Utah. App. 2008), the court found an implied-in-fact contract existed between the owner and the contractor that permitted changes to be made orally, rather than in writing. Nadowessioux's situation with Bontecou Construction is exactly that.

It is within the Court's authority and realm to determine the parties' intent from the unambiguous language and enforce the contract in accordance with its plain meaning – these are questions of law for the trial court.  *Fox v. Wheeler Elec. Inc.*, 2007 WY 171 ¶ 10, 169 P.2d 875, 878 (Wyo. 2007).  The Court can decide the underlying contact claim as a matter of law. *Davison v. Wyoming Game and Fish Com'n*, 238 P.3d 556, 560 (Wyo. 2010).

Nadowessioux received progress reports from Boutecou throughout the project. Nadowessioux's actions and conduct in directing changes and continuing to pay for the more expensive work Bontecou Construction was performing at Nadowessioux's direction created the enforceable implied-in-fact contract.  Nadowessioux has failed to present contrary evidence or any compelling evidence to support its position that Nadowessioux does not have to pay for the

work Bontecou Construction did on their Amangani Villa.  Nadowessioux owes Boutecou for the work it performed which is the same work that has benefited Nadowessioux.

## II.      Where Ambiguities Lie in the Contract

Nadowessioux does not directly challenge Bontecou Construction's contract analysis and instead criticizes documents that Bontecou Construction included in its exhibits for the Court. Nadowessioux does not effectively challenge the fundamental proposition that the Exhibits Bontecou Construction provided are in fact part of the parties' agreement.  Extrinsic evidence is often considered and in fact constitutes the contract when the parties have modified their original agreement.  *Bulis v. Wells*, 565 P.2d 487, 490 (Wyo. 1977)

The exhibits filed and authenticated by Bontecou Construction constitute the parties' agreement and implied-in-fact contract.  Nadowessioux has offered no evidence rebutting the same.   Whether or not Bontecou Construction signed emails or other documents, which are exhibits in this case and/or cited to, is irrelevant to the issues before the Court.  Obviously, all of the exhibits cited and submitted to the Court have been a large part of this case for several years. It should come as no surprise to Nadowessioux's counsel that the project documents, payment history, affidavits, and the like, are more than noteworthy and comprise much more than just "correspondence" or banter between the parties.  Based on *Bulis* and other Wyoming case law, the evidence of Nadowessioux's redesign of the project after the original contract and bid is the evidence that demonstrates Nadowessioux's modification of the original agreement; therefore such evidence is proper for the Court to consider.

## III.     Habitual Disregard

In specifically addressing Nadowessioux's argument that there are no signed change orders, the Wyoming Supreme Court has held that when an owner orders additional and changed work and allows the work to proceed without fully executed change orders, such "habitual

disregard" of the written change order requirement waives the formal change order requirement. *Huang International, Inc. v. Foose Construction Co.*, 734 P.2d 975, 977-978 (Wyo. 1987). Other courts agree that the owner's habitual disregard of a change order provision constitutes waiver of any requirement for formal change orders.

Nadowessioux disregarded the change order requirement in the parties' original agreement, waived the provision, and modified the contract to the point that the modified contract did not require signed change orders.  This is not a dispute about shifting the blame or cost from Bontecou Construction to Nadowessioux, as the Debtor would like the Court to believe.  Quite the opposite is true.  It was Nadowessioux who remodeled the Villa and chose to build "House B," a much more expensive and complicated remodel than "House A" which was the subject of the original contract and bid by Bontecou Construction.  By directing new and more expensive work and continuing to pay for that work, Nadowessioux created a new contract. The Exhibits that prove that contract are not extrinsic evidence outside of the four corners of the contract, but instead are the contract.  Nadowessioux's effort after the fact to limit the Court's consideration only to the original contract is barred by Nadowessioux's own disregard and waiver of the original contract.  In other words, Nadowessioux cannot resurrect the original change order provision as a defense to payment after waiving and disregarding that provision.

Nadowessioux's after the fact argument that it is not obligated to pay for the work even though it received the value and benefit of the work because it did not sign change orders is implausible legally.  Nadowessioux's argument is also groundless in light of the record demonstrating Nadowessioux's course of conduct to the contrary throughout the project.

## IV.    Reliance on Course of Conduct

The parties' course of conduct governs, as interpreted with the initial AIA contract and the implied-in-fact contract.  Nadowessioux's actions, including its pattern of payment,

constituted promises and represented actions that it wanted the work done and would pay for it, as Nadowessioux had in the past.  In Wyoming, it is clear that:

> "(a)s a general rule, if the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach, because it was not fulfilled according to its letter."  *PBS Enterprizes, Inc. v. CW Capital Asset Management LLc*, 2008 WY 53 ¶ 9, 183 P.3d 1140, 1142 (Wyo. 2008); *Forshee v. Delaney*, 2005 WY 103 ¶ 8, 118 P.3d 445, 449 (Wyo. 2005); *ruby Drilling Co. v. Duncan Oil Co.*, 2002 WY 85; 47 P.ed 964, 968-69 (Wyo. 2002); *Roussalis v. Wyoming Med. Center, Inc.*, 2000 Wy 98, 4 P.3d 209, 240 (Wyo. 2000); *Harvard v. Anderson*, 524 P.2d 880 (Wyo. 1974).

Nadowessioux is obligated to pay for the new, modified work directed by Nadowessioux via the new set of plans in December 2006, and other changes it made right up to the end of the job.  Nadowessioux is obligated to pay under the parties' implied-in-fact contract.  *Brit v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 647-648 (Wo. 2003); *SOS Staffing Service v. Fields*, 54 P.3d 761 (Wyo. 2002).

## V.    Conclusion

Although Nadowessioux continues to make baseless claims that it is owed "credits," the evidence is clear that Nadowessioux made timely payments to Bontecou Construction, until it simply chose not to, when Nadowessioux attempted to unilaterally change the rules.  Curiously, all are still waiting patiently for evidence which backs up Nadowessioux's so-called "credits."

Nadowessioux's position remains unclear at this point, as its response failed to tackle the implied-in-fact contract, the evidence of habitual disregard, and the parties' course of conduct throughout the project.

The initial contract documents that were modified by the parties into the implied-in-fact contract is the contract that binds the parties.  Bontecou Construction fulfilled its obligations by building the Villa.  Nadowessioux needs to fulfill its obligations under the parties' agreement by paying for the work it requested.

Respectfully submitted,

/s/ David J. Askanase

| | |
|---|---|
| David J. Askanase | TBN 01390000 |
| daskanase@hwa.com | |
| Simon Mayer | TBN: 24060243 |
| smayer@hwa.com | |

HUGHES WATTERS ASKANASE, L.L.P.
333 Clay Street, 29th Floor
Houston, Texas 77002-4168
Telephone: 713-759-0818
Facsimile:  713-759-6834
**ATTORNEYS FOR
BONTECOU CONSTRUCTION, INC.**


/s/ Andrea L. Richard

Andrea L. Richard, Attorney
The Richard Law Firm, P.C.
P.O. Box 1245
199 East Pearl Avenue, Suite 102
Jackson, WY 83001-1245
Telephone:  307-732-6680
Facsimile:  307-732-6638
Email Address:   Andrea@ARichardLaw.com
*Admitted Pro Hac Vice*
**CO-COUNSEL FOR
BONTECOU CONSTRUCTION, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2011, a true and correct copy of the foregoing *Bontecou Construction, Inc.'s Rebuttal Memorandum in Support of its Claim – Nature of Underlying Contract* was served on the parties shown on the attached Service List by ECF and/or US Mail, first class postage prepaid, as indicated.

/s/ David J. Askanase

David J. Askanase